127 N.J. Super. 207 (1974)
316 A.2d 737
TOWNSHIP OF RIVER VALE, PLAINTIFF,
v.
R.J. LONGO CONSTRUCTION CO., INC. AND CAMPOLI AND SON, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 4, 1974.
*211 Mr. Victor W. Hart for plaintiff (Messrs. Gladstone, Hart, Mandis, Rathe & Shedd, attorneys; Ms. Celene Y. November on the brief).
*212 Mr. William A. Feldman for defendant R.J. Longo Construction Co., Inc.
Mr. Richard Jon Contant for defendant Campoli and Son, Inc. (Messrs. Contant, Contant & Meehan, attorneys).
PRESSLER, J.C.C., Temporarily Assigned.
This declaratory judgment action, submitted to the court for disposition by way of motion and cross-motions for summary judgment,[1] raises the single legal question of the right of a municipality to award a public works contract to the lowest bidder, who, in lieu of accompanying his bid with the 10% certified check required by the published notice and instructions to bidders, submitted a bid bond in the penal sum of the required amount.
The lowest bidder, defendant R.J. Longo Construction Co., Inc. (Longo), claims that it is entitled to the award of the contract, asserting that submission of the bid bond constituted substantial compliance with the municipal requirements for a security deposit. The second lowest bidder, defendant Campoli and Son, Inc. (Campoli), claims that it is entitled to the award of the contract, asserting that Longo's submission of the bid bond in lieu of a certified check constituted a material noncompliance with the municipal requirements, thus disqualifying it as the lowest responsible and complying bidder. Plaintiff Township of River Vale, faced with these defendants' conflicting demands, chose the course of awarding the contract to neither, seeking instead, *213 by the commencement of this action, a judicial declaration as to which bidder is entitled thereto.
The essential facts, as demonstrated by the pleadings, affidavits, exhibits and stipulations of the parties, are not in dispute.
River Vale is in the process of installing, in progressive stages and by bond financing, a municipal sanitary sewer system to be ultimately connected to the extended trunk lines of the Bergen County Sewer Authority. On December 19, 1973 it advertised for bids on so-called "Contract No. 6, Northern Valley Lateral Sewers." The advertisement required that each bid be accompanied by a consent of surety, that is, an undertaking by a surety company to provide the municipality with a performance bond in the full amount of the bid if the bidder were successful in obtaining the contract, and by a certified or cashier's check in the amount of 10% of the bid or $20,000, whichever was less. The advertisement further provided that the conditions of the deposit were the execution by the low bidder of the contract and his furnishing of the required performance bond, the deposited sum to be forfeited as liquidated damages upon the bidder's default of either condition. The instructions to bidders, in the provision requiring the certified or cashier's check, specifically stated that "Proposal or bid bonds will not be accepted."[2] Plaintiff, in both the advertisement and in its instructions to bidders, expressly reserved the right to waive any "informalities, irregularities or minor defects in the bids received," or to reject all bids. The instructions further provided *214 that the township "may consider informal, irregular, or defective any bid not prepared and submitted in accordance with the provisions hereof" (emphasis added).
The 13 bids received by River Vale in response to its advertisement were opened on the evening of January 31, 1974, at the specified time and place. Longo's low bid, in the amount of $1,419,180, had annexed to it a bid bond in the penal sum of $20,000, conditioned as required by the notice to bidders. Campoli's bid, in the amount of $1,449,185, was accompanied by a certified check in the amount of $20,000. The 11 other bids, all higher than Campoli's, were also accompanied by certified checks. The question of the acceptability of Longo's bid having been raised when the bids were opened, Longo, the following morning, submitted a certified check in the amount of $20,000 to the municipal clerk.
It is not suggested that Longo's bid in any other way failed to meet the specifications. It is also not disputed that both Longo and Campoli are deemed "responsible" by plaintiff and that both submitted with their bids a properly completed and adequate statement of qualification. Nor is it disputed that Longo, in prior bidding for plaintiff's public works contracts, had submitted certified checks. Longo's explanation for the bid bond here submitted, as stated in the affidavit of its president, is simply that it was
* * * my understanding and belief that bid bonds in the statutory amount of 10% of the contract price bid are acceptable practice in the State of New Jersey in cases such as this and I sincerely believed in preparing this bid that the option was mine to submit a bid bond, as is my usual practice, instead of the cashier's or certified check as requested in the advertisement for bids.
Plaintiff originally assumed that it had neither the power nor the discretion to waive its certified check requirement in these circumstances, irrespective of any inclination it might have had to do so, and its complaint demanded judgment declaring that it should award the contract to Campoli. At the hearing on the motion, however, municipal counsel made *215 clear that plaintiff's preference would be to award the contract to Longo because of the municipal savings to be thereby effected; that it was completely satisfied with the security of the bid bond, and that its option would be to waive the certified check requirement if, as a matter of law, the bid bond submission were deemed to constitute substantial compliance with its stated security requirement. This position was later iterated in its supplemental letter memorandum.
Based on the foregoing, it is clear and the court so finds, first, that the expeditious disposition which the summary judgment technique of R. 4:46 was designed to afford is particularly appropriate here, the controversy presenting exclusively a question of law, and second, that the declaratory action technique here employed by plaintiff pursuant to N.J.S.A. 2A:16-50 et seq., in view of the insistent demands of the two bidders, was an appropriate procedure for bringing the controversy before the court, particularly as each bidder had advised plaintiff that if the contract were awarded to the other, it would promptly institute suit seeking to reverse that municipal action.
The question here posed must be resolved in the context of the express provisions as well as the purpose and policy of the bidding requirements of the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. (formerly N.J.S.A. 40:50-1). The purpose of competitive bidding for local public contracts is, as has been frequently reiterated, not the protection of the individual interests of the bidders but rather the advancement of the public interest in securing the most economical result by inviting competition in which all bidders are placed on an equal basis, thereby guarding against favoritism, improvidence, extravagance and corruption. While this policy dictates that only bids which comply with the specifications and instructions are acceptable, it also dictates, lest the primary purpose of achieving economy be unnecessarily frustrated, that minor irregularities and immaterial variances in the form of the bid not be permitted to result in its invalidation, particularly where the municipality has, as here, *216 expressly reserved the right to waive such defects and there is no suggestion of any fraud, bad faith or collusion surrounding the transaction. See, e.g., Hillside Tp. v. Sternin, 25 N.J. 317, 322 (1957); Bryan Const. Co. v. Bd. of Trustees, etc., Montclair, 31 N.J. Super. 200, 206 (App. Div. 1954); P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 201-202 (App. Div. 1959), certif. granted 31 N.J. 75 (1959), app. dism. 31 N.J. 556 (1960); Hanover Tp. v. Inter. Fidelity Ins. Co., 122 N.J. Super. 544, 551 (App. Div. 1973); 10 McQuillin, Municipal Corporations (1966 ed.), §§ 29.29, 29.65. There must, therefore, be applied two criteria in determining whether a specific noncompliance constitutes a substantial and hence nonwaivable irregularity  first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. See Hillside Tp. v. Sternin, supra; 10 McQuillin, supra, § 29.65 at 397. It is concluded for the reasons here set forth that the irregularity here is not of such a nature and is, therefore, waivable by plaintiff.
In 1971 the Legislature enacted the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq., including N.J.S.A. 40A:11-21, which provides in full as follows:
There may be required from any person bidding on any contract or agreement, for any contracting unit, advertised in accordance with law, that the bid be accompanied by a certified check, cashier's check or bid bond, payable to the contracting unit as a guarantee that if the contract or agreement is awarded to him he will enter into a contract therefor and will furnish any performance bond or other security required as a guarantee or indemnification. The amount to be so deposited shall be 10% of the bid, but in no case in excess of $20,000.00.
*217 Although the New Jersey statutes were silent prior thereto as to a municipality's right to require a security deposit, that right, its salutary purpose, the widespread use of the bid bond as a required or permitted mode of deposit, and the applicability of the waiver principle to minor irregularities in the form of the deposit, had been repeatedly recognized and accepted by the courts. See Bryan Const. Co. v. Bd. of Trustees, etc., Montclair; P. Michelotti & Sons, Inc. v. Fair Lawn; Hillside Tp. v. Sternin; Hanover Tp. v. Inter Fidelity Ins. Co., all supra.
In Bryan Const. Co. the published notice to bidders required a deposit by way of certified check. The specifications, however, referred to bid bonds and included a blank form of bid bond. The court there held that in those circumstances submission of the bond in lieu of a check constituted substantial, if not precise, compliance. In Hillside Tp. the published notice also required a certified check deposit. The low bidder failed to accompany his bid with any form of security and at no time thereafter evidenced any intention to cure the defect. The court held this failure to be a material noncompliance, noting that a demand "for the deposit of some form of security" is a material and appropriate requirement serving the two-fold purpose of providing the municipality with some evidence of the bidder's financial responsibility and permitting the municipality to secure itself against the bidder's failure to execute the contract by declaring a forfeiture of the deposit, thus making itself "whole for any resulting loss or expense by summary action without having to sue for damages." 25 N.J. at 323.
The next decision dealing with irregularity in a security deposit was P. Michelotti & Sons, Inc., supra. There the court, considering the strict injunction of Hillside Tp. against erosion of the bidding policy even at the expense of sacrificing a public fiscal advantage, nevertheless found immaterial and waivable the deposit of an uncertified check in lieu of the required certified check where the bidder submitted a replacement certified check the day after the bids *218 were opened. The court's observation was that the municipal waiver "in no way affected fair and competitive bidding. This was not a case of `material departure,' `substantial noncompliance', or a `substantial variance' which would stand in the way of a valid contract * * *." And see, Kensil v. Ocean City, 89 N.J. Super. 342 (App. Div. 1965). And finally, in Hanover Tp., supra, the court upheld the municipal waiver of a defect in a bid bond whose stated amount was $12,000, some $1,885 less than the required 10% of the bid, on the finding that the minimal extent of the variation and the parties' good faith materially distinguished the situation before it from that presented in Hillside Tp., where the bidder "neither attempted to, or intended to, submit a check as called for by the advertisement." 122 N.J. Super. at 551.
While it does not appear that our courts have yet considered the precise irregularity here involved, analysis of the foregoing adjudicated security-deposit disputes, in view of the statutory policy and the subsequent enactment of N.J.S.A. 40A:11-21, compels the result here reached.
First, it must be recognized that a bid bond issued by a reputable surety company serves both of the purposes noted in Hillside Tp. Even though plaintiff pointed out at the hearing that its security deposit requirement was not primarily intended as evidence of financial responsibility, that having been otherwise dealt with in the bid documents, it is nevertheless clear that as a practical matter a bidder's ability to meet the deposit requirement will provide the municipality with some measure of assurance of his financial stability. That a reputable surety company, which customarily exercises appropriate caution before assuming the risk of issuing the bond, is willing to guarantee the bidder's compliance is, however, as good  and perhaps a better  demonstration of the bidder's probable ability to perform as his own deposit of what is essentially cash. Further, the bond affords the municipality very little less protection than it secures by having available the check-forfeiture remedy. Certainly the *219 bond affords it an easy remedy by way of summary action against the surety company to recover the full penal amount. It is not left, as was the concern in Hillside Tp., with only the unsatisfactory recourse of a plenary action against an unsecured bidder in which its actual damages are subject to proof and limit the recovery. The bond is furthermore, and for these reasons, substantially better security than the unsecured promise to pay represented by the uncertified check which was approved in P. Michelotti & Sons, Inc. Defendant Campoli, in urging that a certified check and a bid bond are substantially different forms of security from the municipal point of view, points to cases collected in Annotation, "Surety's Liability on Bid Bond For Public Works," 70 A.L.R.2d 1370 (1960), illustrating the kinds of problems which may be encountered in seeking recovery on bid bonds. It need merely be observed, however, that these problems ordinarily arise out of the assertion of defenses by surety companies which would be equally available to bidders themselves in challenging a municipal attempt to declare a forfeiture of a cash deposit.
Consider further the use of a bid bond in lieu of a certified check as it may affect the common standard of competition  the second criterion. It is purely speculative as to whether the bond premium does or does not ordinarily exceed the financing charge which may be incurred by a bidder depositing a certified check, either by way of interest lost during the deposit period or interest paid to borrow the deposited sum. Nor does it appear that the out-of-pocket cost in providing the security deposit, in contradistinction to the performance bond premium, is an element of the job cost calculated by the contractor in computing the amount of the bid. Cf. Atbanese v. Machetto 5 N.J. Super. 605 (Law Div. 1949), aff'd 7 N.J. Super. 188 (App. Div. 1950). Nor can it be fairly said, as was the case in Hillside Tp., that the effect of the acceptance of a bid bond in lieu of a certified check would either relieve the low bidder of the burden of *220 complying with a required element of the competitive scheme or would place him at an actual or potential competitive advantage in relation to bidders who elect to compete and who furnish certified checks. In Hillside Tp. the issue was not one of comparability or acceptability of one form of security vis-a-vis another. There, no form of security was offered at all.
Most significant, however, is the effectiveness of the bid bond alternative in stimulating competitive bidding. As defendant Campoli itself points out, a bidder may be discouraged from simultaneously bidding on several contracts where certified check deposits are demanded, as he may be unable or reluctant to tie up the amount of cash thus required. The utility of the bid bond technique, therefore, is to widen the circle of potential bidders without substantially diluting the essential public protection which a certified check deposit affords. Indeed, it may be assumed that the Legislature's inclusion of the bid bond alternative in N.J.S.A. 40A:11-21, which constitutes a restatement of the theretofore judicially approved common practice,[3] proceeded from its recognition of the public advantage thereby gained and its intention to secure that advantage to local governmental units. Note that the predecessor provision on which this enactment is based, N.J.S.A. 40:25-9 (applicable to counties only and repealed by N.J.S.A. 40A:11-38), while substantially similar in language to the 1971 provision, expressly referred only to cash or certified check as the form *221 of security deposit, although, as the parties have stipulated, counties nevertheless commonly used bid bonds in lieu thereof. It is thus clear that N.J.S.A. 40A:11-21 represents a legislative determination of the essential comparability of the bid bond and certified check forms. It may, therefore, be argued, as defendant Longo urges, that the legislative intent, consistent with the public policy of encouraging competitive bidding, was to require the municipality, if it chose to demand security at all, to accept any of the legislatively designated forms in which it might be offered. Thus, the statute is susceptible to the interpretation that municipalities are precluded in the first instance from the option of demanding one form of security to the exclusion of others. While that construction of N.J.S.A. 40A:11-21 may have merit and appeal, the question need not, however, be reached. The point here is simply that the legislative placing of these deposit forms in an apparent position of equal status further bespeaks their substantial comparability and therefore the immateriality of submitting one rather than the other, and hence the municipal right to waive that noncompliance with its security demand.
Defendant Campoli seeks to counter these arguments by reliance upon Stage v. Whitehouse, 43 Misc.2d 703, 252 N.Y.S.2d 142 (Sup. Ct. 1964), in which a bid bond was submitted by the low bidder in lieu of the required certified check and the court upheld the municipal award of the contract to the second lowest bidder. That case is distinguishable on two essential grounds. First, the municipality chose not to waive the defect, the court suggesting, however, that it could have had it so opted. 252 N.Y.S.2d at 146. Second, and more significant, the bid bond there submitted was not in the amount of the required 10% of the bid but rather limited to the difference between the amount of the principal's bid and the next lowest bid. A bid bond in such form does not necessarily constitute the same extent of security as a 10% certified check and further, in such form, would not *222 accord with the requirements of N.J.S.A. 40A:11-21 and might well not be within the municipal discretion to accept.
The court finds the remaining objections of defendant Campoli to be without substantial merit. It urges first that the express stipulation by plaintiff in its instructions to bidders that a proposal or bid bond would not be accepted precludes it from a subsequent determination to accept it. Not so. Since plaintiff expressly, both in positive and negative terms, reserved the right to waive insubstantial irregularities, it may waive any irregularity which as a matter of law is concluded to be an insubstantial one. It is further important to note that where the irregularity is not substantial, it may well be the duty as well as the right of the municipality to waive it. See 10 McQuillin, supra, § 29.65 at 397. Campoli further argues that Longo's delivery of a certified check on the morning following the opening of bids failed to cure the defect. While it is, indeed, clear that a material defect cannot be permitted to be cured after the opening of bids, it is equally clear that an insubstantial defect may be. See Faist v. Hoboken, 72 N.J.L. 361 (Sup. Ct. 1905); Bryan Const. Co. v. Bd. of Trustees, etc., Montclair, supra, 31 N.J. Super. at 206. While it is, moreover, evident that the good faith of the parties may not cure a substantial defect, a bidder's good faith, evidenced as here by the subsequent compliance, may be an appropriate factor for municipal consideration in its determination of whether to waive a minor irregularity.
In the circumstances here the plaintiff's determination to waive the defect and to accept the Longo bid is well within its discretion. The motion for summary judgment of defendant Longo is granted.
NOTES
[1] The cause was heard on an expedited basis. The complaint was filed with the court on February 15, 1974, together with a notice of motion for summary judgment, returnable February 22, 1974. An ex parte order was on that date entered abbreviating the time for the filing and hearing of the motion. Defendant Campoli, while not filing a written cross-motion for summary judgment, advised the court of the commencement of the hearing that it also agreed that there was no genuine dispute of material fact and, with the consent of all counsel, cross-moved orally, for summary judgment.
[2] Prior to the hearing the court requested all counsel to produce as joint exhibits all relevant bid documents. There was not, however, submitted prior to or at the hearing the complete, some 200-page book of contract documents, instructions and specifications. The matter was, therefore, argued on the basis of the public notice to bidders as constituting the sole municipal expression of the certified check requirement. Subsequent to the hearing defendant Campoli submitted to the court, with the consent of the other parties, page B-3 of the specification book which contained the express statement of non-acceptance of proposal or bid bonds above quoted.
[3] A review of the available legislative history is not helpful in determining the precise intention of the Legislature in adopting the verbiage of what is now N.J.S.A. 40A:11-21. The sole indication suggests that this section was intended to consolidate then existing law. See County and Municipal Law Revision Commission, "Preliminary Draft, Local Contracts Law." (Nov. 7, 1960); County and Municipal Law Revision Commission, "Third Legislative Report, Local Contracts Law," chapter 6 (1961); N.J. Senate, County and Municipal Government Committee, "Public Hearing on Local Public Contracts Law," (April 4, 1972).