665 A.2d 803

TEC ELECTRIC, INC., PLAINTIFF, v. FRANKLIN LAKES BOARD OF EDUCATION, AND REDMANN ELECTRIC CO., DEFENDANTS.

Superior Court of New Jersey
Law Division Bergen County

Decided June 19, 1995.

*Robert T. Lawless*, for plaintiff (*Hedinger & Lawless*, attorneys).

*Stephen R. Fogarty*, for defendant Franklin Lakes Board of Education (*Fogarty & Hara*, attorneys).

*Glenn A. Farrell*, for defendant Redmann Electric Co. (*Beattie Padovano*, attorneys).

STARK, J.S.C.

The issue before the court is whether the failure of the lowest bidder to include a Prequalification Affidavit is a nonconformity requiring bid rejection pursuant to the Public School Contracts Law, *N.J.S.A.* 18A:18A–32.

On May 12, 1995, defendant Franklin Lakes Board of Education (Board of Education) opened bids for a project known as "Additions and Alterations at Franklin Avenue Middle School." Among the bidders for Contract No. 5–Electrical work were plaintiff, Tec Electric Incorporated (Tec), and defendant, Redmann Electric Company (Redmann). Tec was the lowest bidder, submitting a base bid of $834,490, and Redmann was the second lowest bidder, with a base bid of $879,499.

One of the bid specifications was the submission of a one page document entitled Prequalification Affidavit. However, the ten items on the bidder checklist prepared by the Board of Education for enclosure with the bid proposal did not include the required Prequalification Affidavit. Item three on the checklist called for "*Proof of N.J. DBC Pre-qualification* (form DBC 701—amount of uncompleted contracts; and Form DBC Notice of Classification)." Tec's bid included both the DBC Form 701 and Notice of Classification but failed to include the Prequalification Affidavit.

On May 25, 1995, the Board of Education awarded the contract to Redmann, having disqualified Tec for failing to submit a Prequalification Affidavit. Tec was not offered an opportunity to cure that deficiency.[1] That Tec's bid in any other way failed to meet the specifications is not suggested.

On June 5, 1995, Tec commenced this action against both the Board of Education and Redmann to declare the Board of Education's contract with Redmann void.

Analysis of the Public Schools Contracts Law, *N.J.S.A.* 18A:18A–1 to 59, is required to determine whether the failure to comply with the mandatory language of *N.J.S.A.* 18A:18A–32 can be cured after bids have been opened.

Courts have consistently held in the context of Public Contracts Law, *N.J.S.A.* 40A:11–1 to 49, that the purpose of the competitive-bidding process is to secure the most economical result in the expenditure of public moneys by promoting uninhibited competition and guarding against "favoritism, improvidence, extravagance and corruption." *Township of Hillside v. Sternin,* 25 *N.J.* 317, 322, 136 *A.2d* 265 (1957); *see also L. Pucillo & Sons, Inc. v. Mayor of New Milford,* 73 *N.J.* 349, 356, 375 *A.2d* 602 (1977); *Terminal Constr. Corp. v. Atlantic County Sewerage Auth.,* 67 *N.J.* 403, 410, 341 *A.2d* 327 (1975). Those goals are also intended to be achieved through the Public Schools Contracts Law. *F.S.D. Industries, Inc. v. Board of Educ.,* 166 *N.J.Super.* 330, 334, 399 *A.2d* 1021 (App.Div.1979).

Accordingly, the statutes authorizing competitive bidding demand that publicly advertised contracts be awarded to the "lowest responsible bidder." *N.J.S.A.* 40A:11–6.1; *N.J.S.A.* 18A:18A–18. Our Supreme Court, in its most recent pronouncement on public

---

[1] During the course of the hearing on the return date of the order to show cause, the parties stipulated that on May 12, 1995, the Board of Education had accepted a bid for electrical work on another school project from a bidder who had submitted a Prequalification Affidavit that had neither been signed nor notarized. The Board of Education allowed that bidder to cure the defect by submitting a notarized signature page sometime after the bids had been opened.

bidding, reiterated that the statute contemplates that the contract be awarded to the lowest bidder that "complies with the substantive and procedural requirements in the bid advertisements and specifications." *Meadowbrook Carting Co. v. Island Heights Borough,* 138 *N.J.* 307, 313, 650 *A.*2d 748 (1994) (citing *Hillside, supra,* 25 *N.J.* at 324, 136 *A.*2d 265).

■ While strict compliance with public-bidding guidelines is required, the Supreme Court has recognized that competitive-bidding provisions should be construed and administered in a manner so as not to thwart the primary purpose of achieving economy. As such, immaterial deficiencies in bids can be waived. *Meadowbrook, supra,* 138 *N.J.* at 314–15, 650 *A.*2d 748. In fact, Judge Pressler has suggested that "where the irregularity is not substantial, it may well be the duty as well as the right of the municipality to waive it." *Township of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 222, 316 *A.*2d 737 (Law Div.1974). There the issue was whether the type of security deposit required in the specifications, a certified check, was substantially the same as a bid bond supplied by the contractor. *Id.* at 212, 316 *A.*2d 737. The court determined that there was no discernible difference when each was analyzed in light of the bidding statute purposes. *Id.* at 218–21, 316 *A.*2d 737.

■ The two-part test to determine materiality announced in *River Vale* which was endorsed in *Meadowbrook, supra,* 138 *N.J.* at 315, 650 *A.*2d 748, requires the following determination:

[F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

[*River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.*2d 737].

■ The courts of this State have not addressed whether the failure to include a Prequalification Affidavit constitutes a material bid defect. Proper application of the *River Vale* criteria requires

a focused inquiry into the purpose and function of the Affidavit at issue.

*N.J.S.A.* 18A:18A–26 requires that all bidders for public work in excess of $20,000 be prequalified in accordance with the requirements prescribed in *N.J.S.A.* 18A:18A–23, 26 to 33. Pursuant to *N.J.S.A.* 18A:18A–27, the Board of Education has delegated the authority to prequalify bidders to the Department of Treasury, Division of Building and Construction (DBC). *N.J.A.C.* 6:20–7.2. Upon completion of the process, the DBC issues two forms verifying the status of the contractor: DBC Form 701–Amount of Uncompleted Contracts; DBC Notice of Classification Form. The parties herein have stipulated that plaintiff's bid had contained both these forms and that its status had not changed between DBC's issuance of the submitted forms and bid opening. The point of contention involves submission of a one page Prequalification Affidavit to defendant Board of Education as required pursuant to *N.J.S.A.* 18A:18A–32: "Every bidder shall submit with his bid an affidavit that subsequent to the latest [qualification information] submitted by him there has been no material adverse change in his qualification information except as set forth in said affidavit."

On its face, the Prequalification Affidavit is a certification under oath that states the following: 1) the type of trade and approved amount of work the bidder is classified to do, 2) the total amount of uncompleted work on existing contracts the bidder has, and 3) the effective dates of the bidder's classification. Assuming the veracity of the Affidavit, the Board of Education can use the Affidavit to ascertain whether there has been any "material adverse change" in the qualification information subsequent to the bidder's last determined classification by the DBC pursuant to *N.J.A.C.* 17:19–2.7. Should the Affidavit contain information pertaining to any material adverse change, the Board of Education is obligated to transmit the information to the DBC for its review and reconsideration of the classification. The statutory scheme does not appear to mandate automatic denial, even if there is an

admission of change by the bidder. The statute expressly provides: "Before taking final action on any such bid, the board of education concerned shall notify the bidder and give him an opportunity to present to the department any additional information which might tend to substantiate the existing classification." *N.J.S.A.* 18A:18A–31.

Defendants argued that the Prequalification Affidavit is a material requirement because it is the only document that assures a bidder's financial information is current. The argument is unpersuasive, since the Notice of Classification Form completed by Tec in late February 1995 was effective through September 30, 1995, while Form DBC 701 (Total Amount of Uncompleted Contracts) was signed, notarized and dated May 2, 1995. The bids were opened on May 12, 1995. Thus, from the face of the bid's contents, it is clear that there was no probability of material change in Tec's financial information since its last submission to the DBC. The information provided on the Prequalification Affidavit simply and essentially duplicates what Tec had already submitted with its bid. The truth or falsity of the Prequalification Affidavit would have had the same consequences if given concurrently with, or after, the bids were opened, but in no event could the Affidavit alter the facts that existed on the day the bid was opened.

If there is some evident problem with the Affidavit information, the statute provides for implementation of curative procedures so that the public can get the benefit of the lowest bid. *N.J.S.A.* 18A:18A–31. Even after bid acceptance, the bidder is required to update its qualifications within thirty days of the award. *N.J.A.C.* 17:19–2.7(d). Implicit in the statutory scheme is an intention to have the public entity continually monitor the contractor, while giving the bidder/contractor the opportunity to cure any deficiencies. The statute provides more stringent results by way of fines and penalties if the Prequalification Affidavit submitted is intentionally false. *N.J.S.A.* 18A:18A–33.

Not only had plaintiff Tec submitted the prerequisite assurances of financial, as well as physical plant and equipment, qualifications, it had supplied the required unqualified bid bond and unqualified consent of surety. Tec and its surety were compelled to execute the contract, issue the required performance and payment bonds, and complete the work according to its terms. Failure to proceed with the execution of the contract work if the bid were accepted would have subjected Tec to severe financial and legal ramifications. Thus, the first prong of the *River Vale* test for waiver has been clearly demonstrated. Defendant Board of Education had substantially the same assurances from Tec as it had from the other contractors relating to their respective ability to enter into, perform, and guarantee all of the contractual work.

With regard to the second criterion of the *River Vale* materiality test, the failure to submit a Prequalification Affidavit offered Tec no opportunity adversely to affect competitive bidding. The information contained in the Prequalification Affidavit concerns the bidder's current DBC classification rating, which in turn denotes a contractor's financial capacity, as well as availability of equipment and personnel, to do the job. It does not and could not influence the amount of plaintiff's or any other contractor's bid. *See In re Contract for Route 280 Section 7U Exit Project,* 179 *N.J.Super.* 280, 285, 431 *A.2d* 848 (App.Div.1981), *appeal dismissed,* 89 *N.J.* 1, 444 *A.2d* 51 (1982). Tec could not avoid its obligations after bid opening and clearly had no intention of doing so, as evidenced by its initiating this litigation. Tec certainly was not offering an unusually high bid to induce acceptance of another's lower bid. There was not a scintilla of evidence or legal argument suggesting that manipulation of the bidding process for competitive advantage was either the intended or unintended result of failure to provide the Prequalification Affidavit. The evidence before the court was clear and persuasive: Tec's failure to submit the statutorily mandated Prequalification Affidavit did not affect the bidding process and could not give rise to "favoritism, improvidence, extravagance and corruption." *Hillside Township, supra,* 25 *N.J.* at 322, 136 *A.2d* 265. The court therefore

finds that the Prequalification Affidavit can be waived at opening under these facts and circumstances.

Having found the omission of the Prequalification Affidavit to be a waivable, immaterial defect, it is necessary to determine whether the denial of the waiver by the Board of Education was an abuse of discretion. *See In re On–Line Games Contract,* 279 *N.J.Super.* 566, 595, 653 *A.*2d 1145 (App.Div.1995). The standard for such review is the ordinary abuse of discretion standard. *Ibid.* The disqualification of Tec resulted in depriving the public of a $47,000 savings. Such action constitutes an abuse of discretion where, as here, all tenets of the public bidding process were effectively met. "The statute was not meant to cost public bodies many thousands of dollars by requiring acceptance of higher bids for mere technical violations." *Schlumberger Indus. v. Borough of Avalon,* 252 *N.J.Super.* 202, 212, 599 *A.*2d 589 (App.Div.1991), *certif. denied,* 130 *N.J.* 8, 611 *A.*2d 648 (1992).

The court is therefore compelled to set aside the award to defendant Redmann. The matter is remanded to the Franklin Lakes Board of Education for award of the bid to plaintiff Tec Electric, Inc., subject to plaintiff's submission of a completed Prequalification Affidavit.