64 A.3d 1004

MATTHEW J. BARRICK, JR., APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF PROPERTY MANAGEMENT AND CONSTRUCTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 2013—Decided May 1, 2013.

378

Before Judges AXELRAD, SAPP–PETERSON and HAPPAS.

*Francis G. Grather* argued the cause for appellant (*Daly & Associates, LLC,* attorneys; *Alan J. Baldwin* and *Mr. Grather,* on the brief).

*Thomas A. Edenbaum,* Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Treasury, Division of Property Management and Construction (*Jeffrey S. Chiesa,* Attorney General, attorney; *Melissa H. Raksa,* Assistant Attorney General, of counsel; *Mr. Edenbaum,* on the brief).

*Joel M. Miklacki* argued the cause for respondent RMD Properties, LLC.

The opinion of the court is delivered by

AXELRAD, P.J.A.D.

Plaintiff Matthew J. Barrick, Jr., the second lowest bidder, appeals from a final decision of the Director, Division of Property Management and Construction (the DPMC), recommending the award of a contract to RMD Properties, LLC, the lowest bidder, to lease office space for a State agency, and denying reconsideration. Plaintiff primarily contends the bid award to RMD and the rejection of his challenges were arbitrary and capricious because RMD's bid was non-conforming as materially deviating from the non-waivable requirement that the site be within a specific distance from accessible public transportation. We agree the agency erred in failing to perform an accessibility analysis when the bids initially reflected that neither bidder complied with the distance requirement of the scope of work (SOW), and in failing to perform a materiality and waiver analysis of the distance requirement on reconsideration when it ascertained that only RMD's bid was noncompliant. As RMD's bid materially deviated from the SOW, we reverse the DPMC's determination that the bid was conforming and the recommendation to award the lease to it, and remand the case to the agency to decide whether to award the lease to plaintiff or to rebid it.

I.

The DPMC, a unit of the Department of Treasury that handles leases for the State, sought to lease space in Morris County for a Department of Labor (DOL) One–Stop Career Center. On April 24, 2009, the DPMC posted an advertisement on its website seeking requests for proposals (RFP) to lease 15,500 to 16,500 square feet of office space, for ten years with an option to cancel after the fifth and seventh years, plus two five-year-renewal options. On September 28, 2010, the DPMC revised the adver-

tisement to expand the SOW. Interested bidders were sent a proposal package.

The proposal package included response forms, the SOW, and a sample lease. The "basic information" statement advised of "special requirements" of "85 parking spaces & public transportation nearby." According to the SOW, the DOL was seeking office and support space for forty-eight employees in the Denville Township or Rockaway Township areas of Morris County, with a preference for eighty-five lighted parking spaces. Among other requirements, the SOW stated that "[t]he office *shall* be located within 1/4 mile of a mode of accessible public transportation (bus route or other means)." (emphasis added). Proposals were timely submitted by plaintiff, the landlord of DOL's current One–Stop Career Center (for 107–109 Bassett Highway, Dover), RMD (for 13 Emery Avenue, Randolph), Highway Enterprises, Inc. (for 350 Route 46, Rockaway), and Mynt Properties, LLC (for 220 Franklin Road, Randolph).

By letter of May 12, 2011, the DPMC rejected Mynt's proposal, concluding its facility was not well suited for DOL purposes because there were no sidewalks or walkways from public transportation to its facility and tractor trailer traffic traversed the common parking lot. The letter stated:

> These issues are very important for this requirement as it is for a One–Stop Career Center. These Career Centers play an important part in the community because they assist the public with obtaining employment or the training needed to meet the demands of our present workforce and also offer educational training programs on-site. *Most of the patrons who require these needs are dependent upon public transportation and therefore need to be provided with the safest environment to meet these goals while ensuring a safe environment for our employees as well.*
>
> *Please be aware that this declaration of ineligibility is for this requirement only.*
>
> [ (Emphasis added).]

The DPMC sent the remaining bidders a letter requesting their best and final offers (BAFO). Plaintiff offered $443,926/year (17,140 sq. ft. × $25.90 per sq. ft.), RMD offered $490,921.20/year (19,404 sq. ft. × $25.30 per sq. ft.), and Highway Enterprises, Inc. offered $528,291.72/year (19,764 sq. ft. × 26.73 per sq. ft.).

The DPMC's decision to award the bid was delayed due to the complexity of the reviews, and the DPMC's regulations only require bidders to hold their prices for ninety days. *N.J.A.C.* 17:11–6.4. Accordingly, on September 22, 2011, the DPMC sent the bidders a letter requesting they re-certify compliance with the requirements of the lease and SOW, and submit a second BAFO. Plaintiff's second BAFO contained no changes from the first, including the price of $443,926/year. The BAFO of RMD was $436,007.70/year (18,243 sq. ft. × $23.90 per sq. ft.) minus $60,476 in concessions. Highway Enterprise's BAFO was significantly higher.

On October 20, 2011, the DPMC issued a notice of intent to award the lease to RMD and outlined the proposed terms and conditions. The DPMC also informed the bidders that any challenge to the recommendation was to be made by November 3, 2011. On October 24, 2011, RMD's vice president emailed the DPMC that he was "getting [his] ducks in order in case anyone appeals" and advised that "[t]he one issue that might be brought up is public transportation." He conceded the closest bus stop to his property was .6 mile away, but he offered to contract with a taxi service from Dover to pick up and drop off patrons and employees at no cost to them.

Plaintiff timely challenged the DPMC's decision by letter, claiming RMD's proposal did not meet the mandatory site requirements because the proposed space was not accessible to public transportation. He explained that "the distance and course a pedestrian has to travel to and from the site to public transportation removes the public transportation from the realm of 'accessible.'" He asserted that the bus route closest to RMD's property is not easy to approach, there are no sidewalks or defined road shoulders on Emery Avenue or Route 10, and the shoulders of Emery Avenue and Route 10 are occupied by trees, shrubs, poles, and signs that would require pedestrians to walk in the lane of traffic. Plaintiff also asserted other challenges to RMD's proposal that are not relevant to this appeal.

RMD responded by letter of December 19, 2011, noting that neither its nor plaintiff's properties complied with the distance requirement. RMD claimed, however, that it was under contract to secure a right of way easement and planned to install a paved concrete walkway along this easement which would make the distance from the property to the existing bus stop 700 feet. Alternatively, RMD claimed it was in communication with New Jersey Transit's bus service planner for Morris County "to determine if an additional bus stop can be placed at the intersection of High Avenue and Quaker Church Road, which, if approved, would be less than 200 feet from the building." [1]

On March 30, 2012, the DPMC's assistant deputy director issued the final agency decision, concluding the most cost-effective proposal meeting the DOL's needs was submitted by RMD and the DPMC would recommend the award of RMD's lease proposal to the State Leasing and Space Utilization Committee. He explained that the net present value for the life of the lease proposed by RMD was $3,022,596, while plaintiff's proposal was $3,106,638.

The assistant deputy director noted the undisputed fact that RMD's property was approximately .58 miles from the nearest public transportation. The DPMC rejected plaintiff's contention, based on a New Jersey Transit website trip planner, that his site was only .24 miles from the nearest bus stop, which he had identified as the corner of W. Blackwell Street and Randolph Avenue in Dover, as the DPMC's site visit and measurement revealed the distance was .319 miles. Accordingly, the DPMC found none of the bidders met the one quarter of a mile requirement specified in the SOW. Nevertheless, both the DOL and the DPMC "agree[d] that the distance by which both [plaintiff] and RMD exceed the 1/4 mile requirement is de minim[i]s and certainly should not trump the more important and overriding consideration which is identifying the most cost effective proposed lease

---

[1] The proposed concrete walkway, additional bus stop, and taxi service were never pursued by RMD.

agreement which will best serve the interests of the state." The assistant deputy director never addressed plaintiff's accessibility challenge to RMD's site.

By letter of April 9, 2012, plaintiff asked the DPMC to reconsider its decision, contending the agency made an "incorrect factual determination" that his property was beyond the distance requirement. Plaintiff submitted a certification and exhibits to demonstrate that he was the only bidder whose property met the material distance and accessibility requirements of the SOW. Plaintiff explained that in his proposal he correctly identified the bus line, but misidentified the bus stop on the line that was within one quarter of a mile from public transportation. He conceded the bus stop listed in his proposal, at the corner of W. Blackwell Street and Randolph Avenue, was beyond one quarter of a mile of his property; however, he certified that the bus stop at Blackwell and North Warren Streets was only .2498 of a mile away. Plaintiff argued that RMD's bid, however, should not have been considered because it did not meet the requirement of the SOW. He requested the DPMC supplement the record with these facts, uphold his challenge, and reverse its determination to recommend the award of the lease to RMD.

By letter of April 24, 2012, the assistant deputy director rejected plaintiff's request. He noted that the bus stop at Blackwell and North Warren Streets was not identified in plaintiff's initial challenge. He confirmed, however, that the newly identified bus stop was within one quarter of a mile of plaintiff's site. He explained that at the time of the initial award the DPMC believed all bidders were slightly beyond the one-quarter-mile requirement and repeated his statement in the final determination that the agencies agreed that the distance by which both bidders exceeded that requirement was de minimis and should not "trump" the "overriding consideration" of "the most cost effective proposed lease agreement which will best serve the interests of the State." (emphasis in original deleted). That plaintiff now satisfied the distance requirement, however, did not "change the initial analy-

sis" because "the entire distance issue presented in this challenge is de minim[i]s, and not in any way material to which site would serve the best interests of the State [because] the only real issue for consideration is which site is the most cost effective." The assistant deputy director was satisfied the RMD proposal was "the most cost effective proposed lease agreement which will best serve the interests of the state."

This appeal ensued.

On appeal, plaintiff argues:

POINT I

THE RMD PROPOSAL DEVIATES MATERIALLY FROM THE REQUEST FOR PROPOSALS, IS NONCONFORMING, AND SHOULD HAVE BEEN REJECTED.

   (a) The RMD Property Is More than a Quarter of a Mile from Public Transportation.

   (b) There is No Public Transportation Accessible from the RMD Property.

   (c) DPMC Cannot Waive the Conditions Established by its Own Scope of Work.

POINT II

THE PROPOSED LEASE IS CONTRARY TO THE PUBLIC POLICY OF THIS STATE.

## II.

Generally, our review of a final administrative agency determination is limited. *In re Carter*, 191 *N.J.* 474, 482, 924 *A.2d* 525 (2007). We will not interfere with the DPMC awarding a contract bid if there is no bad faith, corruption, fraud, or gross abuse of discretion. *Commercial Cleaning Corp. v. Sullivan*, 47 *N.J.* 539, 549, 222 *A.2d* 4 (1966). Moreover, "courts should not and cannot substitute their discretion for that of the Director[.]" *Ibid.*

We also consider the statutory authority and regulatory responsibility of the DPMC and the Director when awarding a lease contract. The applicable statutory provisions and regulations promulgated reflect the Legislature's intent to grant broad discretionary power to the Director to award or reject bids. *See Keyes Martin & Co. v. Dir., Div. of Purchase & Prop.*, 99 *N.J.*

244, 252, 491 *A*.2d 1236 (1985). Nonetheless, we review "the Treasurer's determination of whether a bid conformed to the contract specifications" with "the less-deferential, ordinary standard for administrative action, namely, that the determination was not arbitrary or unreasonable." *DGR Co. v. State, Dep't of Treasury, Div. of Prop. Mgmt. & Constr.*, 361 *N.J.Super.* 467, 474, 825 *A*.2d 1203 (App.Div.2003)(citing *In re On–Line Games Contract*, 279 *N.J.Super.* 566, 593, 653 *A*.2d 1145 (App.Div.1995)).

*N.J.S.A.* 52:34–12(g) mandates the DPMC select the conforming bid that "will be most advantageous to the State, price and other factors considered." The regulation defines "cost effective" as "the least expensive space procurement alternative that can be demonstrated to conform to criteria provided by [the] DPMC in the Request for Leased Space Proposal and to the operational concerns and restrictions of the State agency." *N.J.A.C.* 17:11–1.3.

■ One of the key functions of the contracting State agency is ascertaining whether each bidder on a contract is a responsible bidder and whether each submitted bid conforms to the requirements of the RFP. Through bid conformity and bidder responsibility review, "the contracting unit is assured of equality among bidders, of the financial and ethical ability of the bidders to perform, and of performance of the contract in accordance with the RFP." *On–Line Games, supra*, 279 *N.J.Super.* at 593, 653 *A*.2d 1145. "The preliminary inquiry is whether the bid deviates from the RFP. If there is no deviation, the bid must be deemed conforming. If there is a deviation, a decision must be made as to whether it is material and can be waived." *Id.* at 594, 653 *A*.2d 1145.

■ The DPMC must be mindful that the purpose of bidding laws is "to secure for the taxpayers the benefits of competition and to promote the honesty and integrity of the bidders and the system[.]" *Id.* at 589, 653 *A*.2d 1145. The New Jersey Supreme Court has held that the "distinction between conditions that may or may not be waived stems from a recognition that there are

certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding." *Terminal Const. Corp. v. Atl. Cnty. Sewerage Auth.*, 67 *N.J.* 403, 412, 341 *A.*2d 327 (1975). However, "advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to ... influence any potential bidder to refrain from bidding, ... are the kind of conditions which may not under any circumstance be waived." *Ibid.*

According to the Court, "[i]t is firmly established in New Jersey that material conditions contained in bidding specifications may not be waived." *Id.* at 411, 341 *A.*2d 327. Nevertheless, this rule "does not apply to minor or inconsequential conditions." *Ibid.* In *Township of River Vale v. R.J. Longo Construction Co.*, 127 *N.J.Super.* 207, 216, 316 *A.*2d 737 (Law Div.1974), the court held that once a deviation has been identified, the issue is whether it is a non-waivable specification.

The court set forth a two-prong test, later adopted by the Supreme Court in *Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 315, 650 *A.*2d 748 (1994), to determine whether a deviation from the RFP is non-waivable. The materiality test is:

> [F]irst, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [*River Vale, supra*, 127 *N.J.Super.* at 216, 316 *A.*2d 737.]

This test is flexible and permits the Treasurer to "evaluate the entire RFP and determine the overall importance of the omission to it as a whole." *On–Line Games, supra*, 279 *N.J.Super.* at 600, 653 *A.*2d 1145. If the answer to both questions is no, then the deviation may be waived.

In *On–Line Games* we reversed the State Treasurer's determination that the bid of AWI for equipment, materials, and services to implement and operate the on-line gaming system of the New Jersey State Lottery was conforming to the RFP and remanded for the Treasurer to decide whether to award the contract to the next lowest responsible bidder or to rebid it. *Id.* at 574, 653 *A.*2d 1145. The RFP "specified that messages on the customer display unit 'must be clearly visible from fifteen feet by customers.'" *Id.* at 597, 653 *A.*2d 1145. We concluded that AWI's failure to include in its initial proposal a customer display unit that was visible from fifteen feet rendered its bid non-conforming, and this deviation was material and non-waivable. *Id.* at 600–03, 653 *A.*2d 1145. We rejected the Treasurer's conclusion that the lack of a customer display visible at fifteen feet was an immaterial deviation "in light of the importance all evaluators placed on the advertising function of the Lottery and considering the explicit language of the RFP as to the visibility factor." *Id.* at 600, 653 *A.*2d 1145.

█ Here, the SOW states, "[t]he office *shall* be located within 1/4 mile of a mode of accessible public transportation (bus route or other means)." (emphasis added). It is also clear from the record the DPMC deemed accessibility a critical factor in site considerations because it preliminarily rejected Mynt's proposal based on a lack of sidewalks or walkways providing access to public transportation for the DOL's patrons and employees. In the disqualification letter, the DPMC expressly noted that the issue was "very important" because most of the patrons of the Career Center are dependent on public transportation and need to be provided with safe access.

It is undisputed RMD's site is .58 of a mile from the nearest public transportation. It is also undisputed plaintiff's site is .2498 miles from the Blackwell/North Warren Street bus stop. The DPMC could have taken the position that once the bids were open, plaintiff could not remedy the error in his initial bid which listed the correct bus line but misidentified the bus stop as W. Blackwell Street and Randolph Avenue, which is .319 miles from the site.

*See In re Jasper,* 406 *N.J.Super.* 213, 224, 967 *A.*2d 350 (App.Div. 2009) (holding that "alteration of the original proposal, post-opening, contradicts our public bidding scheme and undermines the integrity of the bidding process"). We further assume for the sake of argument that because it was the third time the lease was put out for bid, and it appeared neither bid complied with the distance requirement of the SOW, the DPMC was justified in determining this requirement was de minimis to avoid incurring the additional delay and expense of having to rebid the project.

The March 30, 2012 final determination, however, provides as a sole explanation for its recommendation to award the lease to RMD the conclusory statement that RMD had the "most cost effective proposal." The cost difference between the two proposals, however, appears insignificant in view of the other expressed considerations: the present value for the life of the lease for RMD's proposal was $3,022,596 while plaintiff's was $3,106,638.

The agency's decision provided no comparison of the two locations with respect to their "safe environment" and accessibility to public transportation. Nor did it address the concerns raised by plaintiff regarding the difficulty of traversing the bus route from RMD's property, including the lack of sidewalks or defined road shoulders on Emery Avenue and Route 10, and the trees, shrubs, poles, and signs along those shoulders that would require pedestrians to walk in the lane of traffic. The agency also failed to explain why it was not concerned that a pedestrian, potentially one with a disability as the office space included Disability Services, would have to walk .5 mile farther roundtrip from the bus stop to the RMD site than to plaintiff's site. Apparently, RMD had concerns about these issues, because it unofficially suggested a taxi service, concrete walkway, or additional bus stop, which it abandoned.

We also note that in denying plaintiff's challenge, the DPMC did not rely solely on plaintiff's clerical error in its bid regarding the identity of the nearest bus stop. Rather, in his April 24, 2012 letter, the assistant deputy director responded to plaintiff's request for reconsideration as follows:

> *The fact that we have now confirmed that Barrick's site is just [barely] within 1/4 of a mile from the nearest bus stop, in my view, doesn't change the initial analysis.* The distance by which the RMD site exceeds the 1/4 mile requirement is still *de minim[i]s.* In other words, the 1/4 mile requirement is simply not a material factor in analyzing this bid, and certainly should not trump DPMC's paramount statutory consideration which is to identify the most cost effective proposed lease agreement which will best serve the interests of the State.
> [ (Emphasis added)(emphasis in original deleted).]

As in the former determination, there was no analysis of "de minimis" or "materiality," but simply conclusory statements.

As compared with the prior analysis, the DPMC was no longer faced with the dilemma of whether to reject all bids as noncomplying with the one quarter of a mile requirement of the SOW. Rather, it had one bid, plaintiff's, that complied with the distance requirement and at least facially with the accessibility requirement, and one bid, RMD's, that undisputedly deviated from the distance requirement. In awarding the bid to RMD, the agency failed to address the relevant standards and determine whether the " 'non-compliance constitutes a substantial [material] and hence non-waivable irregularity.' " *On–Line Games, supra,* 279 *N.J.Super.* at 594, 653 *A.*2d 1145 (quoting *River Vale, supra,* 127 *N.J.Super.* at 216, 316 *A.*2d 737) (alteration in original). The DPMC performed no analysis of the overall importance of the distance requirement and made no determination as to the effect of a waiver.

Based on our analysis of the record and applicable law, we are satisfied the requirement in the SOW that the site "shall be located within 1/4 mile of a mode of accessible public transportation (bus route or other transportation)" is material and non-waivable. The requirement was mandatory in its explicit language and clearly critical in its intent as evidenced by the nature of the facility and the DPMC's disqualification of Mynt. *See On–Line Games, supra,* 279 *N.J.Super.* at 600, 653 *A.*2d 1145. Moreover, there can be no doubt that such waiver would undermine the integrity of the competitive public bidding process and suggest unfettered discretion, favoritism, or corruption. *See Meadowbrook Carting, supra,* 138 *N.J.* at 314–15, 650 *A.*2d 748. The

distance and accessibility requirement to public transportation potentially dissuaded other bidders whose properties did not comply. Moreover, the DPMC had already used the lack of sidewalks and walkways connecting Mynt's site to public transportation as a partial reason for declaring its proposal ineligible. Additionally, one bidder, plaintiff, satisfies this requirement as to distance and presumably as to accessibility because it is the current landlord.

RMD's bid materially deviated from the SOW, was non-conforming, and non-waivable. Accordingly, the DPMC was without discretion to recommend the award of the lease to RMD. *See On–Line Games, supra,* 279 *N.J.Super.* at 603, 653 *A.*2d 1145. We reverse and remand to the DPMC to decide whether to award the lease to plaintiff or to rebid it. We do not retain jurisdiction.