703 A.2d 352

SERENITY CONTRACTING GROUP, INC., PLAINTIFF-APPELLANT, v. THE BOROUGH OF FORT LEE AND C. RAIMONDO & SONS CONSTRUCTION CO., INC., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 5, 1997—Decided December 12, 1997.

Before Judges BROCHIN, KESTIN and EICHEN.

*Robert T. Lawless* argued the cause for appellant (*Hedinger & Lawless*, attorneys; *Mr. Lawless*, on the brief).

*Brian M. Chewcaskie* argued the cause for respondent Borough of Fort Lee (*Gittleman, Muhlstock, Chewcaskie & Kim*, attorneys; *Mr. Chewcaskie*, on the brief).

*Bruce D. Meller* argued the cause for respondent C. Raimondo & Sons Construction Co., Inc. (*Peckar & Abramson*, attorneys;

*Mr. Meller,* of counsel and, with *Richard A. Kennedy,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Plaintiff, Serenity Contracting Group, Inc. (Serenity), filed suit seeking restraints against defendants from entering into a contract for the construction of new police department headquarters, and an order requiring defendant Borough of Fort Lee (the municipality) to award the contract to Serenity. The verified complaint alleged that Serenity and defendant C. Raimondo & Sons Construction Co. (Raimondo) had bid on the project pursuant to the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49, and that, despite Serenity's low bid, the Borough Council had impermissibly awarded the contract to Raimondo, the next lowest bidder.

After reviewing the proofs and the arguments of the parties, the trial court denied the relief sought, entering judgment for defendants and dismissing the complaint with prejudice. In a written opinion, after reciting the procedural history and the contentions of the parties, the trial judge elucidated the reasons for his decision:

> Although Serenity submitted the lowest bid, the Mayor and Council of Fort Lee determined that Serenity's bid was deficient, and therefore non-responsive, as a result of numerous unexplained alterations and other defects.
>
> In support of its position requesting the court to rescind the contract between Fort Lee and Raimondo, Serenity relies upon *N.J.S.A.* 40A:11–6.1, which reads in part: "All purchases, contracts or agreements which require public advertisement for bids shall be awarded to the lowest responsible bidder." Serenity argues that because it was the lowest responsible bidder for the Project, it is entitled by law to the award of the contract. This court disagrees in that although Serenity may have been the lowest bidder, the Mayor and Council of Fort Lee did not find it to be the lowest responsible bidder.
>
> In order to reject a low bid on a finding of irresponsibility, "there must be evidence of such character concerning the irresponsibility of the bidder as would cause fairminded and reasonable men to believe it was not in the best interest of the municipality to award the contract to the lowest bidder." *Stano v. Soldo Constr. Co.,* 187 *N.J.Super.* 524, 534, 455 *A.*2d 541 (App.Div.1983) (*citing Arthur Venneri Co. v. Paterson Housing Auth.,* 29 *N.J.* 392, 402, 149 *A.*2d 228 (1959)). A

determination that a bidder is irresponsible must be a bona fide judgment based upon facts tending to support the determination. *Stano,* 187 *N.J.Super.* at 535, 455 *A.*2d 541. Thus, a determination by a governing body not to award a contract to a bidder because of irresponsibility will be reviewed on an abuse of discretion standard. *Id.*

Applying these principles to the matter at bar, this court finds that there were facts to support Fort Lee's decision to award the contract to Raimondo, and not Serenity. First, Serenity's bid contained several alterations. Some of the alterations were made by crossing out bid prices and hand writing other prices in their stead, while others were accomplished by means of "white-out".

Second, the alterations on Serenity's bid were not explained or noted in the bid over the signature of the bidder as required by § 6(d) of the Bid Specifications. Fort Lee claims that as a result of this, it feared that Serenity could have disclaimed the alterations as having been made without authorization and could have sought to withdraw its bid on this ground.

Third, Serenity listed two subcontractors for the plumbing and fire work, one of which was typed in and one which was hand written. The handwritten entry was not initialed, and was written in a different color from the rest of the bid.

Based upon these deficiencies, Fort Lee determined that it was not in its best interests to award the contract to Serenity. In that this court finds that there was no abuse of discretion on the part of Fort Lee in awarding the contract to Raimondo, Serenity's application is denied.

Plaintiff appeals. We affirm.

Although we agree with the result reached by the trial court, we disagree with the trial judge's treatment of this matter as one involving issues of bidder responsibility. We see it, rather, as implicating only questions of bidder responsiveness.

The Borough Council's resolution awarding the bid to Raimondo refers to Serenity's "defective bid." The minutes of the meeting at which that resolution was adopted reveal that Raimondo had filed an objection to Serenity's bid. The Borough Attorney articulated his concerns:

[He] stated that the low bid contained unexplained alterations and two subcontractors were listed in the bid specifications. Concerning the two subcontractors he did not see this as a problem because the subcontractors have to submit a proof of surety and a performance bond has to be submitted by the general contractor for the whole contract; however of the two subcontractors listed in the bid one was typed in and the other was hand written in different colored ink. In addition, certain prices have been crossed out and whited out and other numbers have been initialed. The person who signed the bid was not the same as the initials that were used with the cross outs. There are too many questions and the protestor makes a good point. The bid is defective on its face.

Under the heading "PROPOSAL", whited out, crossed out and handwritten changes were made in both the verbal and numeric

statements of the total proposed contract price. In the "MISC. BID REQUIREMENTS" section, an amount on line 18, "bullet resistant components/prefab. detention cells", was crossed out and "113,000" handwritten in the margin; and the "total bid" amount was whited out and "$3,987,000", handwritten in. In the "identification of subcontractors" section, a company name and location, "NORTHWEST MECHANICAL WEST MILFORD, NJ", was hand-printed after a " + " sign beside the typed entry in the "plumbing and fire" category. "C.C. BOND" was hand-printed beneath the company name. The entire hand-printed entry was in a different color ink than was used for other handwritten entries in the bid. All other subcontractors' names were typewritten.

The hand-printed additional entry in the plumbing and fire subcontractor category was unaccompanied by signature or initials. Handwritten initials in script, readable as "GMC", appeared beside the other changes. The initials were presumably those of George Capodagli, who was designated in the bid proposal as the President of Serenity. The bid proposal itself was signed by M. Jeanine Capodagli, designated as Vice President of Serenity. None of the changes made was accompanied by an explanation, notwithstanding the provision in the bid specifications: "Alterations by erasure or interlineation must be explained or noted in the bid over signature of the bidder."

The parties, in their arguments on appeal, advert to two other objections to Serenity's bid raised by Raimondo on the municipal level: asserted defects in the bid bond, especially with regard to the form of consent of surety, and in the form of the affirmative action affidavit. Although these issues were raised before the trial court also, they were not addressed in the trial judge's opinion. He apparently regarded them to be of no consequence. We agree. These asserted deficiencies are matters essentially of form, not substance. They do not rise to the level of material defects, *see Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 314–15, 650 *A.*2d 748 (1994), and neither the resolution adopted by the Borough Council awarding the bid to Raimondo, nor the minutes of the meeting at which it was ratified, establish that these "defects" played any part in the decision to reject Serenity's bid and to award the contract to Raimondo.

Serenity advances two related arguments regarding the altera-tions in its bid, the municipality's determination to reject the bid because of those modifications, and the trial judge's reliance upon an abuse of discretion standard in affirming the municipal action. Reduced to their essence, the arguments are that the alterations in Serenity's bid did not constitute material defects and, therefore, the municipality lacked the discretion to reject the bid because of them.

The issues and arguments are related because of the principle that a public entity may not waive any material depar-ture from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects. *See Hillside Twp. v. Sternin,* 25 *N.J.* 317, 324–25, 136 *A.*2d 265 (1957). To this extent, Serenity's position is correct. Where an asserted defect in a bid is material, *i.e.,* when "a specific noncompliance constitutes a substantial and hence non-waivable irregularity," *Meadowbrook Carting Co. v. Borough of Island Heights, supra,* 138 *N.J.* at 315, 650 *A.*2d 748 (quoting *Township of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 216, 316 *A.*2d 737 (Law Div. 1974)), the public entity to which it has been submitted is without discretion in dealing with it. The bid must be rejected.

> Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extrava-gance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived.
>
> [*Terminal Constr. Corp. v. Atlantic County Sewerage Auth.,* 67 *N.J.* 403, 412, 341 *A.*2d 327 (1975).]

It does not follow, however, that where the bid defect is non-material the public entity must accept the bid. Discretion exists to accept or reject, for valid reasons, a bid that does not conform with specifications or formal requirements in non-materi-al respects. Such reasons, in order to be considered valid, must be non-pretextual. They must reflect sound business judgment,

and may not bespeak any avoidance of the underlying purposes of public bidding requirements. *Terminal Constr. Corp. v. Atlantic County Sewerage Auth., supra,* 67 *N.J.* at 411, 341 *A.2d* 327 ("Public contracting units may resolve problems arising from such conditions in a sensible or practical way.").

> The purpose of the Local Public Contracts Law is to "secure for the public the benefits of unfettered competition." *Terminal Constr. Corp. v. Atlantic County Sewerage Auth.,* 67 *N.J.* 403, 410, 341 *A.2d* 327 (1975); *see also Township of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 215, 316 *A.2d* 737 (Law Div.1974) (stating that purpose of competitive bidding for local public contracts is not protection of individual interests of bidders, but rather advancement of public interest in securing most economical result by inviting competition in which all bidders are placed on equal basis). The statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against "favoritism, improvidence, extravagance and corruption." *Township of Hillside v. Sternin,* 25 *N.J.* 317, 322, 136 *A.2d* 265 (1957); *see also L. Pucillo & Sons, Inc. v. Mayor of New Milford,* 73 *N.J.* 349, 356, 375 *A.2d* 602 (1977) (*L.Pucillo*) (stating that purpose of act is "'to guard against favoritism, improvidence, extravagance and corruption'") (quoting *Terminal Constr. Corp., supra,* 67 *N.J.* at 410, 341 *A.2d* 327).
>
> [*Meadowbrook Carting Co. v. Island Heights Borough, supra,* 138 *N.J.* at 313, 650 *A.2d* 748.]

█ Nothing in the Local Public Bidding Law or in the cases decided thereunder suggests a legislative design to supplant all exercises of principled business judgment by the contracting public entity that conform with the express provisions of the Law and its underlying policies. Such exercises are entitled to respectful review under an abuse of discretion standard, *see Stano v. Soldo Constr. Co.,* 187 *N.J.Super.* 524, 535, 455 *A.2d* 541 (App.Div. 1983); 10 *McQuillin on Municipal Corporations* § 29.72 (O'Gradney and Miller rev.1990); *see also In re On–Line Games Contract,* 279 *N.J.Super.* 566, 590, 653 *A.2d* 1145 (App.Div.1995); *Palamar Constr. Inc. v. Township of Pennsauken,* 196 *N.J.Super.* 241, 250, 482 *A.2d* 174 (App.Div.1983), especially where they are based upon a bidder's failure to comply strictly with bid specifications, whether substantive or procedural. *See Meadowbrook Carting Co. v. Borough of Island Heights, supra,* 138 *N.J.* at 313, 650 *A.2d* 748 ("[T]he contract must be awarded ... to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications."); *Township of River Vale v. R.J. Longo Constr. Co., supra,* 127 *N.J.Super.* at 215–16, 316 *A.2d* 737; 10 *McQuillin on Municipal Corporations, supra,*

§ 29.73.05. As a conceptual matter, we reject Serenity's argument that the discretion which public entities have under the Local Public Contracts Law to determine bidder responsibility does not exist in appropriate measure as to questions of bidder responsiveness, such as those implicated here. Case law provides no support for such a distinction, and logic does not commend it.

■ The municipality's rejection of Serenity's bid was a valid discretionary exercise of this type. The provision in the bid specifications which required "[a]lterations by erasure or interlineation [to be] explained or noted in the bid over signature of the bidder" was obviously designed to provide the municipality with assurance that such modifications were authorized, regular, understandable, and binding. Even if it were appropriate to regard the ambiguous initials beside some of the changes as satisfying the "signature of the bidder" requirement of the bid specifications, none of the changes was supported by an explanation, and one of them, the hand-printed addition of a subcontractor's name—arguably the most problematic of all—was accompanied by neither signature (or initials) nor explanation. The other alterations related to very basic features of the bid, the price of the proposed contract and one of its components.

The hand-printed addition in the "plumbing and fire" subcontractor category, without any explanation, raised significant questions on the face of the bid. Were there, indeed, to be two subcontractors performing the work in that category? If so, how were the two subcontractors to share the work? Was it intended that one would complete the plumbing work and the other the fire work, or was each to perform in both subcategories of work? If the latter, how was the work to be divided? Which subcontractor would be responsible for what portion of the total work, i.e., how were the obligations and rights of the two subcontractors to be allocated? What was the practical meaning of the term "C.C. BOND" and did it bear upon one of the subcontractors or both? In the face of these questions and others, the municipality was entitled to reject the bid as defective, i.e., unresponsive, by reason of its lack of clarity for want of an explanation.

In the circumstances before us, we need not decide whether the defects in this bid were material and, hence, non-waivable; or non-material and therefore waivable. If the defects were material, the municipality was obliged to reject the bid. If the defects were non-material, the municipality could waive them or, in a valid exercise of sound business judgment that kept faith with the policies underlying our public bidding laws, reject the bid nevertheless.

Here, the municipality determined to invoke the conformity standard with some degree of strictness, and not to award the contract to the non-conforming bidder. In the circumstances, especially in the light of the nature of the alterations made and the sections of the bid proposal involved, we do not regard that decision to have been attended by arbitrariness, unreason or caprice; nor has plaintiff met its burden of proving that the decision made was motivated by the types of considerations the Local Public Contract Law was enacted to prevent, *i.e.*, frustrating the policies of "securing [the] most economical result by inviting competition in which all bidders are placed on equal basis ... [and] promoting competition on an equal footing and guarding against 'favoritism, improvidence, extravagance and corruption.'" *Meadowbrook Carting Co. v. Island Heights Borough, supra,* 138 *N.J.* at 313, 650 *A.2d* 748 (quoting *Township of Hillside v. Sternin, supra,* 25 *N.J.* at 322, 136 *A.2d* 265). *See Palamar Constr., Inc. v. Township of Pennsauken, supra,* 196 *N.J.Super.* at 255, 482 *A.2d* 174. ("The common thread in these decisions is whether the defect threatens the policies underlying the competitive bidding statutes."). An unsupported allegation of favoritism to a local bidder does not suffice to establish that an abuse of discretion occurred.

In the absence of an adequate showing to the contrary, the municipal decision at issue here may be seen as a valid effort to discourage bidders from playing fast and loose with public bidding processes and requirements generally, and with published specifications in particular. Even though we view this matter as bearing upon bidder responsiveness, and not involving bidder responsibility as the trial court saw it, we reach the same result because, to the extent the municipality was empowered either to accept or

reject the bid, our review of that determination is governed, as well, by abuse of discretion standards. *See McQuillin on Municipal Corporations, supra,* § 29.83.

Affirmed.