**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1762-19T3

PACT TWO, LLC,

     Plaintiff-Respondent,

v.

TOWNSHIP OF HAMILTON,

     Defendant-Respondent,

and

QUAD CONSTRUCTION
COMPANY,

     Defendant-Appellant.

_____

Submitted March 23, 2020 – Decided April 20, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1717-19.

Walter S. Zimolong, attorney for appellant.

Elissa Grodd Schragger, Township Attorney, attorney for respondent Township of Hamilton.

Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, attorneys for respondent Pact Two, LLC (Teresa M. Lentini, on the brief).

PER CURIAM

Defendant Quad Construction Company (Quad) appeals from Judge Mary C. Jacobson's order reversing defendant Hamilton Township's (Hamilton) award of a wastewater treatment construction contract to the second-lowest bidder, Quad, and directing the contract be awarded to the lowest bidder, plaintiff Pact Two, LLC. Hamilton rejected plaintiff's bid because it deviated from the bid specifications. Judge Jacobson determined the deviation was not material, and Hamilton's decision not to waive the deviation and award the contract to plaintiff constituted an abuse of discretion because it was not based on sound business judgment and is inconsistent with the policies underlying the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -49. We agree and affirm.

I.

The pertinent facts are not disputed. Hamilton published a notice to bidders for the award of a contract for the rehabilitation of the gravity thickener collector mechanism and existing digester floating cover at its wastewater treatment plant. Hamilton provided bid specifications detailing the work and

2

equipment to be supplied under the contract, and the requirements for the bid submissions.

The specifications required installation of a domed "guided gas holder cover" (cover) over the existing digester tank. The cover is an important and integral part of the rehabilitation project for which the bids were requested.[1] Section 11661 of the specifications required bidders supply information concerning "the furnishing, installation, . . . [and] testing" of the cover.

Part 2 of Section 11661 detailed the cover's requirements. More particularly, Part 2.3(D) required an analysis, "using a finite element model with all applied loading" (finite model analysis), of the cover the bidder proposed to install. The specifications also required "[t]he analysis . . . be performed using recognized software which is commercially available with verification problems and complete documentation and instructions."

Most pertinent to this appeal, Part 2.3(G) specified the cover manufacturer "must have provided [a finite model analysis] on no less than [ten] covers in the

---

[1]  The specifications explained the cover is "for installation in the existing [d]igester which is [forty-five] feet in diameter"; is dome-shaped; must be designed by a professional engineer; and "shall all be made of structural steel." The specifications further required the cover "have a radius 1.5 times the tank diameter" and its "framework shall consist of arched radial erection beams held in position by a center compression ring and peripheral thrusting ring."

A-1762-19T3

past [five] years."  Part 2.3(G) further directed that "[e]vidence" the cover manufacturer performed a finite model analysis "on no less than [ten] covers in the past [five] years . . . be provided with the bid package," including the "location of [the] projects and [the] software used."

On July 31, 2019, Hamilton opened the seven bids it received for the contract.  Plaintiff's $1,945,000 bid was lowest, and Quad's $2,048,850 bid was second lowest.[2]  Plaintiff's and Quad's bids included deviations from Part 2.3(G).  Plaintiff did not include evidence its intended cover manufacturer performed finite model analyses on no less than ten covers in the past five years, or the location of the projects and software used to perform such analyses, as required under Part 2.3(G).  Quad's bid included evidence of its cover manufacturer's performance of the finite model analyses, but it did not include evidence concerning the software used.

In a July 31, 2019 letter to Hamilton, Quad "formally protest[ed]" plaintiff's bid.  Quad asserted the bid was "non-responsive to the solicitation" because it did not include evidence concerning the cover manufacturer's finite

_____

[2]  The remaining bids included: Eastern Environmental Contractors, Inc., $2,194,200; Stonehill Contracting Co., Inc., $2,331,549; BR Welding, Inc., $2,332,500; Spectraserv, Inc., $2,335,750; and GMH Associates of America, Inc., $2,425,204.

4

model analyses as required by Part 2.3(G). Quad asserted the omission "was a material defect which cannot be waived . . . in accordance with the [LPCL]."

On August 20, 2019, Hamilton adopted a resolution awarding the contract to Quad. The resolution listed the amount of each bid, noted plaintiff was the lowest bidder, and stated plaintiff's bid "was non-compliant missing required documentation [and] therefore deemed a no[-]bid."

Plaintiff filed a complaint and order to show cause challenging Hamilton's rejection of its bid and award of the contract to Quad, and requesting injunctive relief. At the order to show cause hearing, Judge Jacobson noted Hamilton rejected plaintiff's bid because it found the failure to include evidence concerning the cover manufacturer's finite model analyses constituted a material bid deviation it lacked the authority to waive. The judge, however, found the record did not permit a determination whether plaintiff's failure to include the evidence constituted a non-waivable material bid deviation under the standard established in Township of River Vale v. R.J. Longo Construction Co., 127 N.J. Super. 207 (Law Div. 1974), as adopted by our Supreme Court in Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307 (1994), or a deviation Hamilton had discretion to waive under the principles addressed in Serenity Contracting Group, Inc. v. Borough of Fort Lee, 306 N.J. Super. 151 (App. Div.

1997).  The judge further observed Hamilton failed to consider Quad's bid deviated from Part 2.3(G)'s requirements because Quad did not provide evidence of the software used by its cover manufacturer to perform the finite model analyses.

Judge Jacobson entered an order granting plaintiff's application for a preliminary injunction barring implementation of the contract.  The judge remanded the matter for Hamilton to determine whether plaintiff's bid deviation deprived Hamilton of assurance the contract would be performed as expected; placed plaintiff in a position of advantage over other bidders; or otherwise undermined competitive bidding.  The court ordered Hamilton to make the same determinations concerning the deviation in Quad's bid.  The court also required that Hamilton consider whether other bid requirements provided Hamilton with adequate assurance the contract would be performed as expected if plaintiff and Quad supplied the evidence missing from their bids after the bid opening.[3]

---

[3] The court directed Hamilton to consider the following provisions in Section 11661 of the bid specifications to determine if they provided adequate assurance the contract would be performed as expected even in the absence of the evidence required under Part 2.3(G): Part 1.3(C), requiring a certification from the cover manufacturer attesting to a stated minimum number of manufactures and installations of gas holder covers; Part 1.4(E), requiring gas cover manufacturer's provision of a performance bond; and Part 2.1, identifying three approved cover manufacturers.

Judge Jacobson also directed that if on remand Hamilton determined the bid deviations were not material, it must notify the court of the bidder chosen to perform the contract. Moreover, the court required that if Hamilton rejected plaintiff's or Quad's bids after finding their respective bid deviations were not material, it must "provide reasons to support [its] decision." The order required Hamilton to supply the court with a report of its determinations.

Counsel for Hamilton subsequently advised the court by letter he had conferred with Hamilton's business administrator, purchasing agent, and director of water pollution control pursuant to the court's remand order, and it was determined the contract should be awarded to Quad. Counsel referred the court to a certification and memorandum from Carrie D. Feuer, Hamilton's Director of Water Pollution Control, and a certification from Michele Bado, Hamilton's purchasing agent.

Feuer's certification described the process Hamilton followed to address the issues in the court's remand order, and it included her opinion that, due to the relatively close range of the seven bid amounts, "all of the bids were competitive and . . . there would be no benefit to [Hamilton] to re-bid the project." Feuer also opined a re-bid of the contract would "delay the start of the desperately needed rehabilitation project" and "run counter to the intent of the

time limitation and liquidated damages for the completion of the project." She further asserted the bids "were within the engineer's cost estimate" and "thus [Hamilton] should not be required to re-bid the project and thus acted properly in awarding the contract to the second[-]lowest bidder[,]" Quad.

In Feuer's memorandum, which was addressed to Hamilton's business administrator, attorney, and purchasing agent, she "summarize[d] [her] position" taken during a meeting held pursuant to the remand order. She noted Part 2.3(G)'s requirements and described the cover's function—the containment of methane gas during the digester process. She further noted Part 2.3(G) required the submission of evidence concerning the cover manufacturer's finite model analyses experience with a bid, and she explained the information was requested to "show proof of [the manufacturer's] experience, which is an indicator of ability to complete quality work."

Feuer also addressed Part 2.3(G)'s requirement of evidence of the software used to conduct the cover manufacturer's prior finite model analyses. She noted the software was required "to show [the cover manufacturer] used a software to conduct the required analyses," but opined "[t]he software information . . . should only be required if the proposed cover manufacturer is not listed [as pre-approved] in the specifications." She noted Quad identified a

pre-approved manufacturer of its cover in its bid, and plaintiff's bid did not identify its proposed cover manufacturer in its bid.[4]

Bado's certification added little. She also generally described that Hamilton's representatives had the meetings concerning the bids following the remand order. She explained the representatives discussed the "importance and necessity of" the omitted evidence in plaintiff's and Quad's bids, as well as plaintiff's "failure to provide the information regarding the digester cover." Bado noted "all of the bids . . . were within the anticipated budget cost for the project," and Hamilton "acted properly in awarding the contract to the second [-]lowest bidder despite the higher cost [because] the bids were all significantly lower than the anticipated project cost."

Judge Jacobson held a second hearing, summarized Hamilton's submissions following the remand in a detailed and thorough opinion from the bench, and determined Hamilton appeared to have concluded plaintiff's and Quad's deviations from the Part 2.3(G) requirements were not material. Judge

---

[4]   The specifications did not expressly require bidders identify the cover manufacturer, although a bidder would presumably identify the manufacturer in the course of disclosing evidence of finite model analyses on at least ten covers, and the location of the projects. Following the opening of the bids, plaintiff identified its proposed cover manufacturer, naming the same pre-approved manufacturer Quad identified in its bid.

Jacobson also considered and made detailed findings under the River Vale standard, and she determined, based on her review of the record and all of the bid specifications, provision of the cover manufacturer's finite model analyses and the software used to perform them was not required to assure plaintiff's performance of the contract as expected and did not either place plaintiff in a competitive advantage over other bidders or otherwise undermine the competitive bidding process. See River Vale, 127 N.J. Super. at 215-16. Judge Jacobson concluded plaintiff's failure to provide the Part 2.3(G) evidence did not constitute a material deviation from the bid specifications, and, therefore, Hamilton had discretion to waive plaintiff's deviation from Part 2.3(G)'s requirements.[5]

The court explained that, although Hamilton has discretion to reject bids based on non-material deviations from the bid specifications, the discretion must be exercised in a manner that is not arbitrary. The judge found Hamilton's

---

[5] Neither Quad nor Hamilton challenges the court's finding plaintiff's failure to provide evidence of its cover manufacturer's finite model analyses and software is not a material deviation from the bid specifications. Indeed, the parties concede plaintiff's deviation from the bid specifications is not material. We therefore do not detail the court's thorough findings and analysis supporting its determination or address the merits of the court's conclusion. An issue not briefed on appeal is deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

discretion to reject bids containing non-material deviations did not provide it with "carte blanche . . . to reject any and all bids that [it] wants to when there is a non-material defect." Judge Jacobson noted that in <u>Serenity</u>, we explained the discretion to reject a bid for a non-material omission must be based on valid reasons, must reflect sound business judgment, and may not bespeak avoidance of the underlying purposes of the LPCL.

Judge Jacobson further found plaintiff demonstrated "there was no . . . sound business rational[e] for" Hamilton's decision not to waive what was conceded to be a non-material bid deviation and award the contract to Quad for an amount more than $100,000 higher than plaintiff's bid. The court noted the decision on remand was made by employees of Hamilton who "do not vote on the budget," and they declined the opportunity to a waive a non-material deviation in plaintiff's bid and obtain for the taxpayers the $100,000 in savings the bid provided over Quad's bid. The court also noted the inconsistency in Hamilton's decision to ignore Quad's deviation from Part 2.3(G)'s requirements and, at the same time, rely solely on plaintiff's deviation to reject its bid. Judge Jacobson concluded Hamilton's decision "undercut the underlying purpose of the public bidding requirement that you award the bid to the lowest responsible and responsive bidder."

Judge Jacobson entered a final judgment directing Hamilton vacate its award of the contract to Quad, requiring the contract be awarded to plaintiff, and denying Quad's motion for a stay pending appeal. Quad appealed, and, in a January 7, 2020 order, we granted Quad's motion for a stay pending appeal.

## II.

Quad argues that in Serenity, we held a municipality "retains broad discretion to reject [any] bid that is defective, even if that defect is non-material," and the court incorrectly usurped Hamilton's exercise of that discretion. Quad claims the issue presented on appeal is "when a [municipality] is compelled to waive a defect," and it asserts the court erred by finding Hamilton was required to ignore the non-material defect and award the contract to plaintiff. Quad also argues Hamilton exercised its sound business judgment by rejecting Hamilton's bid following a deliberative process by its professionals. Last, Quad contends the court applied the wrong standard of review to Hamilton's decision by remanding for Hamilton to determine if the bid deviation was material under the River Vale standard; by requiring Hamilton demonstrate the deviation was material; and by failing to review Hamilton's decision under an abuse of discretion standard. In its brief on appeal, Hamilton contends the

court erred because its decision to reject plaintiff's bid and accept Quad's bid did not constitute a clear abuse of discretion.

Our standard of review of the court's decision is guided by our recognition that in the context of public bidding the "function of [the c]ourt is to preserve the integrity of the competitive bidding process and to prevent the misapplication of public funds." Marvec Constr. Corp. v. Twp. of Belleville, 254 N.J. Super. 282, 288 (Law Div. 1992); see also Barrick v. State, 218 N.J. 247, 261 (2014); In re Jasper Seating Co., 406 N.J. Super. 213, 226 (App. Div. 2009). Here, the court was required to review Hamilton's decision to reject plaintiff's bid and award the contract to Quad "under the ordinary standard governing judicial review of administrative agency final actions." Barrick, 218 N.J. at 259 (citing In re Protest of the Award of the On-Line Games Prod. & Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J. Super. 566, 593 (App. Div. 1995)); see also Marvec Constr. Corp., 254 N.J. Super. at 288. The court could not properly reverse Hamilton's decision unless plaintiff demonstrated the decision was "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." Barrick, 218 N.J. at 259 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

"The purpose of the [LPCL] is to 'secure for the public the benefits of unfettered competition.'" Meadowbrook Carting Co., 138 N.J. at 313 (quoting Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410 (1975)). "[T]he statutory rule in New Jersey is that publicly advertised contracts must be awarded to 'the lowest responsible bidder.'" Ibid. (citation omitted); see also N.J.S.A. 40A:11-4(a). A bidder is considered responsible if it "complies with the substantive and procedural requirements in the bid advertisements and specifications." Ibid.

A governmental entity is without authority to award a contract based on a bid containing a material deviation from the bid specifications. Id. at 314; see also Terminal Constr. Corp, 67 N.J. at 411. In Serenity, we observed "a public entity may not waive any material departure from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects." 306 N.J. Super. at 156.

On the other hand, a governmental entity has discretion to waive non-material deviations—"minor or inconsequential discrepancies and technical omissions"—from the bid specifications. Meadowbrook Carting Co., 138 N.J. at 314. "It does not follow, however, that where the bid defect is non-material the public entity must accept the bid." Serenity, 306 N.J. Super. at 156. A

14

governmental entity has discretion "to accept or reject, for valid reasons, a bid" containing a non-material deviation. Ibid. "[T]o be considered valid," a governmental entity's reasons for accepting or rejecting a bid containing a non-material deviation "must be non-pretextual," "reflect sound business judgment, and may not bespeak any avoidance of the underlying purposes of public bidding requirements." Id. at 156-57. Thus, where a bid contains a non-material deviation from the specifications, "the next step is the specific decision to grant or deny waiver [of the deviation] which is then subject to review under the ordinary abuse of discretion standard." On-Line Games, 279 N.J. Super. at 595.

We reject Quad's claim the court erred in its application of the Serenity standard. The record shows otherwise. At the initial hearing, Judge Jacobson noted Hamilton appeared to have determined plaintiff's bid included a material deviation requiring rejection of the bid, but she found Quad's bid also contained a deviation from the same specification, and the record did not permit an analysis of whether the deviations—by both plaintiff and Quad—were material under the River Vale standard.

Judge Jacobson did not shift the burden to Quad to prove the deviation was not material. As the governmental entity awarding the contract, Hamilton was required, in the first instance, to determine whether the deviations were

15

material or non-material. Without making that determination, Hamilton could not properly decide if it was required to reject the bids because one or both contained a material defect, see Meadowbrook Carting Co., 138 N.J. at 313, or if it had discretion to accept or reject one or both bids because one or both had non-material deviations, Serenity, 306 N.J. Super. at 156.

By remanding the matter, Judge Jacobson did nothing more than afford Hamilton the opportunity to create the appropriate record supporting its decision concerning the materiality of the deviations it, as the contracting party, had the responsibility to make before it awarded the contract. A record did not exist supporting Hamilton's initial decision to reject plaintiff's bid based on a purported material defect that Quad's bid, at least in part, shared.

Following the remand, Judge Jacobson did not place any burden on Quad or Hamilton to prove the validity of Hamilton's decision to reject plaintiff's bid and award the contract to Quad. Judge Jacobson accepted Quad's concession the deviation was not material and separately determined the deviation in plaintiff's bid was not material.[6] The court also considered whether the decision rejecting plaintiff's bid and awarding the contract to Quad constituted an abuse

---

[6] We observe, as did Judge Jacobson, Quad's bid also deviated from Part 2.3(G)'s requirements, and Hamilton implicitly waived that deviation by awarding the contract to Quad.

16

of discretion. The court recognized plaintiff bore the burden of establishing Hamilton's decision constituted an abuse of discretion; Judge Jacobson expressly found plaintiff "[met] [its] burden of proof" of establishing Hamilton's abuse of discretion. We therefore find no merit to Quad's claim Judge Jacobson did not apply the appropriate standard of review of Hamilton's decision and impermissibly shifted any burden to Hamilton or Quad.

Judge Jacobson correctly recognized Hamilton's decision whether to waive a non-material deviation constituted an exercise of discretion, and she engaged in an exhaustive review of the record to determine if Hamilton's decision constituted an abuse of discretion under the Serenity standard. See 306 N.J. Super. at 156; see also On-Line Games, 279 N.J. Super. at 595; Tec Elec., Inc. v. Franklin Lakes Bd. of Educ., 284 N.J. Super. 480, 488 (Law Div. 1995) (finding a decision not to waive a non-material bid defect is reviewed under an abuse of discretion standard). The court did not, as Quad claims, find Serenity required Hamilton waive the non-material bid deviations and award the contract to plaintiff. The judge considered the bid specifications, plaintiff's submissions to Hamilton, and Hamilton's reasons for declining to waive the non-material deviation and awarding the contract to Quad; and she determined rejection of

17

plaintiff's lowest bid was not supported by any reasoned business judgment and conflicted with the policies underlying the LPCL.

We discern no basis to reverse Judge Jacobson's thoughtful and detailed findings or her conclusion that Hamilton's refusal to waive the non-material deviation in plaintiff's bid and award the contract to Quad, at a price more than $100,000 higher than plaintiff's bid, was not founded on valid reasons reflecting a sound business judgment and constituted an abuse of discretion. See Serenity, 306 N.J. Super. at 157-58. We therefore affirm Judge Jacobson's findings and conclusion substantially for the reasons set forth in her decision from the bench.

Affirmed. We vacate our January 7, 2020 order staying the court's final judgment pending appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION