**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2519-24

IN RE BID SOLICITATION
#23DPP00896 T2581
AUCTIONEERING SERVICES:
INTERNET AUCTION TO SELL
SURPLUS PROPERTY.

_____

Submitted January 21, 2026 – Decided February 12, 2026

Before Judges Gilson and Firko.

On appeal from the New Jersey Department of the Treasury, Division of Purchase and Property, RFP No. 23DPP00896.

Taylor Dykema, PLLC, attorneys for appellant Municibid, LLC (Erik Dykema, on the briefs).

Jennifer Davenport, Acting Attorney General, attorney for respondent Department of the Treasury, Division of Purchase and Property (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher A. Kay, Deputy Attorney General, on the brief).

PER CURIAM

Unsuccessful bidder Municibid, LLC (Municibid) appeals from the March 10, 2025 final agency decision and the June 27, 2025 supplemental final agency

decision of the New Jersey Department of the Treasury, Division of Purchase and Property (the Division) denying its protest of the Division's decision to award a contract to Auctions International, Inc. (Auctions).  The Division awarded a $2,904,355, three-year contract to Auctions for a fully functional internet auction service for the purpose of selling State surplus property, real estate, and tax-seized assets (the Bid Solicitation).  Applying the pertinent legal principles, we affirm the final and supplemental agency decisions awarding the contract to Auctions.

I.

We derive the following facts from the record.  Municibid provides internet-based auctioneering services to assist state and local governments in selling surplus property.  Prior to the disputed bid solicitation, Municibid had a contract with the State of New Jersey to provide internet auctioneering services from May 1, 2019, to April 30, 2022, which was extended three times until April 30, 2025.

On June 24, 2024, the Division publicly advertised the procurement.  The Bid Solicitation stated the contract was to be awarded "to that responsible bidder(s) whose [q]uote, conforming to the Bid Solicitation, is most advantageous to the State of New Jersey, price, and other factors considered."

A-2519-24

The Division twice amended the Bid Solicitation. On September 19, 2024, the Division issued a revised Bid Solicitation (the Revised Bid Solicitation) tracking the two amendment changes and providing a revised State Supplied Price Sheet (the Price Sheet). The final due date for bids was October 30, 2024. The Revised Bid Solicitation stated the Division intended to award a single contract across six price lines, and required bidders to complete a Price Sheet, a technical quote, and other required forms.

The price lines were described as: (1) commission percentage for a single asset (item or lot) that sells for up to $100,000; (2) commission percentage for a single asset (item or lot) that sells for over $100,000.01 up to $500,000; (3) commission percentage for a single asset (item or lot) that sells for over $500,000.01 up to $1,000,000; (4) commission percentage for a single asset (item or lot) that sells for over $1,000,000; (5) electronic payment fee; and (6) auction listing fee, if any.

Section 3.35 of the Revised Bid Solicitation explained the process that bidders must perform to submit their Price Sheets. Four steps were involved: first, the bidder shall enter its name in the appropriate field of the price sheet; second, for price lines one to three, the bidder shall insert a percentage for all three years in the corresponding unit pricing column on the Price Sheet; third,

3

the bidder shall follow the process of the second step for line five; and fourth, the bidder follows the process of the second step for price line six, except bidder was required to insert a firm, fixed price in United States dollars rather than a percentage. For all price lines, the Revised Bid Solicitation stated if the bidder left the unit price column blank, "it shall be considered that the [b]idder provided no [q]uote for that price line item."

Section 8.9.2 sets forth how quote pricing would be evaluated, namely via "a weighted consumption/market basket model to evaluate pricing." The Revised Bid Solicitation defined an "[e]lectronic [p]ayment [f]ee" as "[t]he firm, fixed percentage of the winning [a]uction [b]id that will be charged to the winning [a]uction [b]idder for all transactions processed electronically. This [f]ee shall include any credit card or other processing charges." The Revised Bid Solicitation further required that the pricing model be date-stamped and entered into the record before quotes were opened on October 30, 2024.

On September 18, 2024, the Division entered a date-stamped evaluation model establishing the calculations to be used in determining the lowest bidder. Pursuant to N.J.A.C. 17:12-2.7(b),[1] the Division did not disclose this date-

---

[1] N.J.A.C. 17:12-2.7(b) provides:

stamped evaluation model on the values it used for estimated annual quantity or estimated line-item average cost prior to opening the quotes to the bidders.

On the October 30, 2024 quote due date, the Division received and opened three complete quotes from Municibid, Auctions, and Liquidity Services Operations, LLC (Liquidity). First, the Division determined all three bids were responsive as they complied with technical requirements of the Revised Bid Solicitation and awarded all three bidders the same technical score. Therefore, the Division's award of the contract was to be determined by the lowest cost submitted within the Price Sheet.

Second, the Division reviewed the bidders' submitted Price Sheets using its evaluation model, which was set forth in a modified version of the Price Sheet. The Division's evaluation model contained three additional columns that

(b) For all RFPs [(Requests for Proposals)] that set forth evaluation criteria, values, or utility models to be applied by the evaluators in assessing the proposals, and that do not reveal specific, assigned weights or elements, the evaluation committee or assigned Division staff member shall, prior to the opening of proposals, determine, document, and date-stamp such weighted evaluation criteria, values, or utility models. For RFPs not having a negotiation component, the pre-set weighted evaluation criteria, values, or utility models shall be available to the public at the proposal opening event.

provided for: (1) estimated annual quantity; (2) estimated line-item average cost; and (3) total estimated item price for three-year term. The totals of each price line were added together to determine the total quote cost.

Third, the bidders' total quote costs were compared. Overall, the Division found Auction's total quote cost was $2,904,355; Municibid's was $3,025,500; and Liquidity's was $3,474,750.

On January 28, 2025, the Division notified the parties of its intent to award the contract to Auctions. Municibid filed a timely protest with the Division. On March 10, 2025, the Division issued a final agency decision concluding that it had correctly calculated Auctions's bid and had properly deemed it the lowest bid responsive to the Revised Bid Solicitation. The Division reaffirmed the award of the contract to Auctions with a May 1, 2025 effective date.

Municibid appealed the award to this court. Shortly thereafter, in April 2025, Municibid moved on an emergent basis to stay implementation of the contract pending appeal. On May 6, 2025, we granted Municibid a temporary stay for leave to file an emergent motion to stay the contract award. The motion panel's order did not explicitly address whether Municibid had presented a probability of success on the merits. On May 9, 2025, the Division moved to

6

remand the matter to clarify the record. On May 13, 2025, we granted the Division's motion to remand and Municibid's original motion to stay.

On June 27, 2025, the Division issued its supplemental final agency decision. In accordance with our mandate, the Division clarified the selection of the unit estimates and the estimated monetary amounts used to compare the bids and gave greater detail to its analysis. As part of the remand, the Division reviewed all quotes submitted, Municibid's protest and appeal, our order, and relevant statutes, regulations, and case law. The Division explained the evaluation methodology was "applied uniformly to the pricing submitted by each [b]idder." The Division explained how all price lines, including price line 5, were included in the evaluation of the quotes submitted, which was not clearly stated in its March 10, 2025 final agency decision. The Division again rejected Municibid's protest and sustained the contract award to Auctions. On August 5, 2025, the Division moved to accelerate the appeal, which this court granted.

Before us, Municibid argues the Division improperly awarded the contract to Auctions primarily because its bid failed to conform to the Revised Bid specifications. Municibid contends the Division improperly calculated and weighted the electronic payment fee, and the Division's actions were arbitrary, capricious, and unreasonable because the Revised Bid Solicitation failed to

7

disclose an articulable means to weight price. Municibid asserts Auctions's failure to confirm to the Revised Bid Solicitation cannot be waived by the Division, and its decision was a "gross abuse of discretion," warranting a recalculation of the bid totals.

The Division responds that Auctions's bid conformed to the Revised Bid Solicitation. According to the Division, Auctions, unlike Municibid, properly completed the Price Sheet, as revised during the solicitation, and the electronic payment fee has nothing to do with Auctions's Price Sheet or bid conformity. The Division maintains it applied the evaluation model correctly and uniformly, and no recalculation of the bids is required.

## II.

Our review of "administrative actions is severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cnty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)). We "must defer to an agency's expertise and superior knowledge of a particular field." Thurber v. City of Burlington, 191 N.J. 487, 502 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms, 137 N.J. at 27.

An "[a]gency action will not be overturned unless the action is arbitrary, capricious, or unreasonable." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 279-80 (2018) (citing Barrick v. State, 218 N.J. 247, 259 (2014)). "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the person challenging the administrative action." Seigel v. N.J. Dep't of Env't Prot., 395 N.J. Super. 604, 613 (App. Div. 2007).

Under well-established precepts of procurement law, the standard of review of a determination of whether a bid on a public contract conforms to specifications is "whether the decision was arbitrary, unreasonable or capricious." In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995) ("On-Line Games") (citing Palamar Constr., Inc. v. Township of Pennsauken, 196 N.J. Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)).

The applicable standards for public bidding of this State contract are also clear. Whenever advertising by a State procurement agency is required, the "award shall be made with reasonable promptness, after negotiation with bidders where authorized, by written or electronic notice to that responsible bidder

9

whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." N.J.S.A. 52:34-12(a)(g).

"The public bidding statutory scheme vests discretion in the Director of the Division to select which of the responsive bids is 'most advantageous to the State.'" Barrick, 218 N.J. at 258 (quoting N.J.S.A. 52:34-12(a)). Hence, the bid with the best price can be, but does not necessarily have to be, selected.

That said, "[a]lthough broad, the grant of discretion to the Director to administer the public bidding process is not limitless . . . [as] the Division may not award a contract to a bidder whose proposal deviates materially from the RFP's requirements." Id. at 258-59 (citing On-Line Games, 279 N.J. Super. at 594-96). That is because "[b]idding statutes are for the benefit of the taxpayers. . . . Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." On-Line Games, 279 N.J. Super. at 589 (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985)). In light of these guiding principles, "a public entity may not waive any material departure from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects." Ernest Bock & Sons-Dobco Pennsauken Joint Venture v. Township of Pennsauken, 477 N.J. Super. 254, 265

(App. Div. 2023) (quoting Serenity Contracting Grp., Inc. v. Borough of Fort Lee, 306 N.J. Super. 151, 156 (App. Div. 1997)).

"[W]e apply de novo review to an agency's interpretation of a statute or case law." Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011) (citing Toll Bros., Inc., v. Township of West Windsor, 173 N.J. 502, 549 (2002)). Our Supreme Court has consistently held that contract awards under N.J.S.A. 52:34-12(a)(g) should be reviewed under the "gross abuse of discretion standard." Barrick, 218 N.J. at 258 (citing Keyes Martin, 99 N.J. at 252-53). This includes contracts awarded under N.J.S.A. 52:34-12(a)(g), which permits a contract to be awarded "to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." N.J.S.A. 52:34-12(a)(g). Under this higher standard, an appellate court "will not interfere in the absence of bad faith, corruption, fraud[,] or gross abuse of discretion." On-Line Games, 279 N.J. Super. at 592 (quoting Com. Cleaning Corp. v. Sullivan, 47 N.J. 539, 549 (1966)).

Having applied these standards to the issues raised on appeal, we conclude that the Division lawfully awarded the contract to Auctions, the low bidder. We reject all of Municibid's contentions of error. The Division had a sound basis to conclude the same methodology was used for each bidder and it was therefore

11

applied in an equal and fair manner. Importantly, the Division determined inclusion of the electronic fee payment was "erroneous" because the auction bidder, and not the state, pays that cost. We focus our discussion to the issues raised by Municibid.

A.

Municibid argues that Auction's bid failed to conform to the Revised Bid Specifications because the electronic payment was improperly calculated and weighed. According to Municibid, a proper calculation would render it the lowest bidder. Specifically, Municibid contends the Division should have included the estimated annual quantity in its analysis of the total electronic payment fee. Had the Division done so, Municibid asserts Auctions's total electronic payment fee cost would be $1,483,335, rather than $170,355. Using Municibid's formula, Auctions's total quote cost would be $4,217,335 and Municibid's total quote cost of $3,025,500 would render it the lowest bidder.

We discern no material defect concerning calculation of the electronic payment fee. The Division used an articulable standard for calculating line 5— the electronic payment fee—in both: (1) the date-stamped evaluation model; and (2) the supplemental final agency decision. In the date-stamped evaluation

12

model, the Division provided an exemplar, which evidences its method for calculation of the electronic payment fee costs.

Indeed, the evaluation model reveals the Division calculated the electronic payment fee for the three-year term of the contract by adding the estimated line item average cost of line items 1-4, where electronic payment fees could be incurred and applying a 2% estimate of a potential bidder's electronic payment fee percentage for each of the three years. The supplemental final agency decision clearly explained this articulated formula. Moreover, the formula used was not "post hoc justification" as Municibid contends, because the date-stamped evaluation model on September 18, 2024, confirmed the Division had planned on using this method before it reviewed the bids.

Pursuant to N.J.A.C. 17:12-2.7(b), the Division had the authority to withhold specific assigned weights or elements of evaluation criteria from a bid solicitation provided that the Division document date-stamped the weighted evaluation criteria prior to opening bids. The record supports the Division's proper reliance on this predetermined method of calculation and applied it evenly to all bidders. Therefore, there was no error.

Further, section 8.9.2, Price Evaluation, contained in the Revised Bid Solicitation provides, "[t]he pricing model will be date-stamped and entered into

the record before Quote Opening." The Division properly employed this practice and later articulated the evaluation model in its supplemental agency decision. Hence, Municibid's argument lacks merit.

We agree with the Division that Municibid could have utilized several mechanisms if it felt the Revised Bid Solicitation lacked sufficient information to allow an intelligent quote. These include: (1) the questions and answer procedure set forth in the Revised Bid Solicitation; or (2) relying on N.J.A.C. 17:12-3.2[2] to challenge specifications in the Revised Bid Solicitation prior to the quote opening date.

---

[2] N.J.A.C. 17:12-3.2 provides:

> (a) A vendor intending to submit a proposal in response to an advertised RFP, pursuant to N.J.S.A. 52:34-6 to -25 and finding cause to challenge a specification contained within the RFP, may submit a written protest to the Director, setting forth, in detail, the grounds for such protest.
>
> (b) The written protest shall be submitted to the Director only after the Division has formally responded to questions posed during the RFP-established question and answer period and in sufficient time to permit a review of the merits of the protest and to take appropriate action as may be necessary, prior to the scheduled deadline for proposal submission.

B.

We also reject Municibid's argument that the Division acted arbitrarily, capriciously, and unreasonably by relying on its predetermined evaluation model and criteria. Municibid contends Auctions's Price Sheet was not properly completed, and the Division "acted on behalf of [Auctions] in completing the Price Sheet." In addition, Municibid argues Auctions's Price Sheet materially deviated because it relied on the Division's electronic payment fee pricing model.

As stated, the Division was well within its authority to utilize the calculation model contained in the September 18, 2024 evaluation model. Given our holding, the Division did not misapply its authority and acted within its discretion to determine that Auctions had the lowest bid. Therefore, the Division did not act in an arbitrary, capricious, or unreasonable manner.

In light of our decision, we need not address Municibid's argument that a recalculation of bids is warranted.

To the extent that we have not commented on them explicitly, all remaining arguments presented by Municibid lack sufficient merit to be discussed in this opinion. R. 2:11-3(e)(1)(E).

Affirmed. The order staying the award of the contract is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-2519-24